```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
GEORGE S. SCHAFFER, et al.,                                       :
                                                                  :
                              Plaintiffs,                         :     16-CV-1763 (JMF)
                                                                  :
              -v-                                                 :     MEMORANDUM OPINION
                                                                  :        AND ORDER
HORIZON PHARMA PLC, et al.,                                       :
                                                                  :
                              Defendants.                         :
                                                                  :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/27/2016

JESSE M. FURMAN, United States District Judge:

This case is brought as a putative class action under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Title 15, United States Code, Section 78u-4. At a conference held on June 3, 2016, the Court granted the Retirement Trust Funds' motion to be appointed Lead Plaintiff, and denied ERS-PREPA's motion for the same. In brief, the Court concluded that while ERS-PREPA had "the largest financial interest" and thus was the presumptive lead plaintiff, that presumption had been rebutted by "proof" that ERS-PREPA would not "adequately protect the interests of the class" given the fiscal crisis in Puerto Rico and the high probability that ERS-PREPA would be embroiled, even if indirectly, in litigation of an all-consuming variety. 15 U.S.C. § 78u-4(a)(3)(B)(iii). The Court's ruling was memorialized in an Order signed June 6, 2016, and entered the day after. (*See* Docket No. 59, Ex. 1; Docket No. 56).

On June 9, 2016, ERS-PREPA submitted a "motion for reargument" (Docket No. 57) — which the Court construes (as ERS-PREPA itself does) as a motion for reconsideration of the June 6, 2016 Order. (*See* Mem. Law Supp. Mot. Reargue (Docket No. 58) ("ERS-PREPA's Rearg. Mem.") 3). Motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to "ensure the finality of decisions and to

prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Medisim Ltd. v. BestMed LLC*, No. 10-CV-2463 (SAS), 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (internal quotation marks omitted). Such a motion "is appropriate where 'the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Id.* (quoting *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003)). "It is well-settled that [a motion for reconsideration] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple. Rather, the standard for granting a . . . motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks, citations, ellipsis, and alterations omitted). Applying that standard here, the Court concludes that ERS-PREPA presents no valid grounds for reconsideration, and the motion is denied.

ERS-PREPA's contention that the Court applied the wrong legal standard fails to withstand scrutiny. (*See* ERS-PREPA's Rearg. Mem. 7-11). To start with a general point, ERS-PREPA concedes — in agreement with the Retirement Trust Funds — that courts fulfill a "'gatekeeping function' in class action litigation" and that "the Court may have some discretion as gatekeeper in securities class actions." (Reply Mem. Law Supp. Mot. Reargue (Docket No. 65) ("ERS-PREPA's Rearg. Reply") 1, 4). *See* Fed. R. Civ. P. 23(d) (granting broad discretion to district courts to "make appropriate orders" in order to facilitate management of class actions); *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 83 (2d Cir. 2004) ("[T]he District Court's determination that the addition of three named plaintiffs would help the lead plaintiff represent the interests of the class as a whole was not a legal decision that we review *de novo*; instead, it was a managerial

judgment that is entitled to deference."); *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 28 (2d Cir. 2003) (Newman, J., concurring) (discussing district courts' broad discretion to adopt procedural innovations in order to facilitate management of class actions).  Although ERS-PREPA stops short of saying it directly, that discretion — while not unconstrained — undoubtedly applies to appointment of a lead plaintiff under the PSLRA.  *See In re Versata, Inc., Sec. Litig.*, No. C 01-1439 SI, 2001 WL 34012374, at *3 (N.D. Cal. Aug. 20, 2001) ("Although the procedures contemplated by the PSLRA are well defined, district courts have not followed them invariably, especially when doing so would fail the court's ultimate obligation to appoint as lead plaintiff the member or members of the purported plaintiff class who are most capable of representing the interests of the class members." (internal quotation marks omitted)); *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 215 (D.D.C. 1999) ("Congress envisioned that courts still would play an independent, gatekeeping role to implement the PSLRA."); *see also, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 407 n.19 (S.D.N.Y. 2004) ("Even if certificates were required of every candidate for lead plaintiff, the Court could arguably waive such a requirement or any inadequacies in the certificates themselves."); *Yousefi v. Lockheed Martin Corp.*, 70 F.Supp.2d 1061, 1070-71 (C.D. Cal.1999) (rejecting unopposed motion by group of 137 plaintiffs and selecting two from among members of the class to serve as lead plaintiffs).

Second, and more to the point, ERS-PREPA also concedes that "the PSLRA does not specify the standard of proof required to rebut the presumption in favor of the lead plaintiff with the largest financial interest."  (ERS-PREPA's Rearg. Mem. 9).  Nevertheless, citing a Supreme Court decision that predates the PSLRA by over a decade and that discussed the generic burden of proof in civil actions, ERS-PREPA contends that the PSLRA's use of the word "proof" implies either a "preponderance" or a "clear and convincing" burden of proof.  (ERS-PREPA's

Rearg. Mem. 9 (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 387 (1983))).[1] But the case cited does not support that position. Similarly, the veritable parade of authorities cited by ERS-PREPA for the "correct" legal standard makes no reference whatsoever to such a burden.[2]

---

[1] Strangely, in its reply, ERS-PREPA contends that it "does not argue that the standard of proof is 'clear and convincing evidence,' but rather assumes in the absence of contrary Congressional language and intent, that the correct legal stand [sic] is the preponderance of the evidence." (ERS-PREPA Rearg. Reply 2 n.2 (internal citation omitted); *but see* ERS-PREPA Rearg. Mem. 9 (arguing that "th[e] standard is either 'clear and convincing evidence,' or at least a 'preponderance of the evidence'")).

[2] ERS-PREPA includes a formidable-looking string cite in its memorandum of law (*see* ERS-PREPA's Rearg. Mem. 7-8), but nearly all of the cited cases were included in its original motion papers, many for the exact same proposition. Additionally, not one of the cases, even the "new" ones, stands for a proposition that conflicts with the Court's ruling. A couple just quote the statute itself. *See Metro Servs. Inc. v. Wiggins*, 158 F.3d 162, 164 (2d Cir. 1998); *Villella v. Chem. & Mining Co. of Chile Inc.*, 15-cv-2016 (ER), 2015 WL 6029950, at *5 (S.D.N.Y. Oct. 14, 2015). Many simply state, to the extent they have any relevance here at all, that mere speculation or conclusory assertions are not enough to rebut the presumption. *See Vladimir v. Bioenvision, Inc.*, No. 07-CV-6416 (SHS) (AJP), 2007 WL 4526532, at *10 (S.D.N.Y. Dec. 21, 2007) (citing cases); *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007); *Fishbury, Ltd. v. Connetics Corp.*, No. 06-CV-11496 (SWK), 2006 WL 3711566, at *4 (S.D.N.Y. Dec. 14, 2006); *Sofran v. Labranche & Co., Inc.*, 220 F.R.D. 398, 404 (S.D.N.Y. 2004); *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004). Several also reflect the well-established principle that disqualifying an institutional investor on the basis of a conflict of interest is disfavored. *See In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 448 (S.D.N.Y. 2013) (rejecting argument based on conflict posed by lead plaintiff being an institutional investor); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 40 (S.D.N.Y. 2012) (rejecting "'baseless conjecture' about conflicts based on business relationships"); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y 2011) ("[T]he conflict of interest must be shown, not merely speculated . . . ."); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 271 (S.D.N.Y. 2009) (dismissing conflict of interest argument as "speculative"); *see generally In re Cendant Corp. Litig.*, 264 F.3d 201, 244 (3d Cir. 2001) ("By establishing a preference in favor of having [institutional] investors serve as lead plaintiffs, Congress must have thought that the situation present here [involving purported conflicts based on the institutional investor's holdings] does not inherently create an unacceptable conflict of interest."); *accord In re Vesta Ins. Grp., Inc., Sec. Litig.*, No. 98-AR-1407-S, 1999 WL 34831475, at *9 (N.D. Ala. Oct. 25, 1999) ("'[C]ourts have recognized that generic arguments that would systematically disqualify large investors and institutions from serving as lead plaintiff should not suffice as "proof" [of inadequacy] under the statute.'" (quoting *The SEC Speaks in 1999: Office of The General Counsel Recent Judicial Developments*, 1104 PLI/Corp 291, 484–85 (1999))). Others appear to contradict ERS-PREPA's position. *See, e.g., Faris v. LongTop Fin. Techs. Ltd.*, 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) ("Whether or not the Trustees' claims [that one member of a group comprising the presumptively most adequate was involved in a Ponzi scheme] are eventually proven to be true is irrelevant.").

In fact, due to the lack of clear statutory text or controlling precedent from appellate courts, the rebuttal standard, including the precise meaning of the word "proof," is not firmly established. Several courts, including this Court as well as some cited by ERS-PREPA, have treated "proof" as synonymous with "evidence." *See, e.g.*, *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) (finding the presumption "may be rebutted if there is evidence that [the movant] will not fairly and adequately protect the interests of the class"). That does not necessarily shed light on what the *burden* of proof is, but it does explain why mere speculation (or a mere conclusory assertion) is not enough. *See, e.g.*, *Vladimir v. Bioenvision, Inc.*, No. 07-CV-6416 (SHS) (AJP), 2007 WL 4526532, at *10 (S.D.N.Y. Dec. 21, 2007).

Moreover, the statute's text reveals that the "proof" relates to whether a particular lead plaintiff "*will* not" do its job adequately — meaning it is necessarily predictive and probabilistic. ERS-PREPA appears to believe that courts must make definitive conclusions about what "will" (or, more accurately, will not) happen in the future. But courts — being human, not divine, institutions — can assess the likelihood of future events (that is, assess risk) only based on the evidence available at present. *See, e.g.*, *Sofran*, 220 F.R.D. at 404 ("[T]he Williams Group has provided no *proof*, as required by the PSLRA, that the Harper Woods Group is *likely* to drop out as lead plaintiff in this litigation. Without such *proof*, the citations to other cases provides only speculation as to such a possibility." (emphases added)). Consistent with that, many courts have rejected appointments of lead plaintiffs based on *potential* risks. *See, e.g.*, *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 623-24 & n.4 (S.D.N.Y. 2015) (rejecting movant with largest individual financial interest where movant's prior "statements would provide fodder" for class certification challenge); *In re Bally Total Fitness Sec. Litig.*, No. 04C3530, 2005 WL 627960, at

---

The same can be said of the additional cases ERS-PREPA tacks on in its reply brief. (*See* ERS-PREPA Rearg. Reply 4-5).

5

*6 (N.D. Ill. Mar. 15, 2005) ("The PSLRA . . . provides that we ask simply whether [the movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed."); *In re Surebeam Corp. Sec. Litig.*, No. 03-CV-1721-JM (POR), 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) ("Without comment or consideration of Mr. Brown's guilt or innocence as to the underlying charges, this court finds that there is at least a potential that Jamerica will be subject to unique defenses and will not fairly and adequately protect the interests of the class."); *In re Safeguard Scis.*, 216 F.R.D. 577, 582 & n.4 (E.D. Pa. 2003) (finding presumption rebutted where "the issue of credibility," while not resolved by the Court, had "potential and likely adverse effect on the putative class' interests" and left the movant "vulnerable to further attacks that would impose an unnecessary disadvantage on the class"). That is, to rebut the presumption in favor of the movant with the greatest financial loss, there must be "proof" of a non-speculative risk that the movant will not be adequate. It is true that, in its June 3, 2016 oral ruling, the Court used the term "colorable" rather than "non-speculative," but the difference is merely semantic.

ERS-PREPA is also wrong in contending that there was no "proof" to rebut the presumption here. First, the Retirement Trust Funds submitted evidence showing that ERS-PREPA "is a trust fund created by PREPA to administer its pension plan," that "PREPA provides ERS with administrative services, use of facilities, and funds a substantial portion of ERS' operating expenses," and that "there is clear overlap in leadership personnel between PREPA and ERS," including that ERS's Board is "composed of eight members, one of which is the Executive Director of PREPA, and three more are appointed directly by the Governing Board of PREPA." (Docket No. 40, at 12-13 (citing Docket No. 42, Ex. B (ERS-PREPA's basic financial statements and supplementary information for June 30, 2014 and 2013) and Ex. C (ERS-PREPA's basic financial statements and management's discussion and analysis for June 30, 2011

and 2010)).  In addition, the Retirement Trust Funds submitted evidence showing — as is widely known — that "[i]n total, PREPA has debt obligations of approximately $9 billion, including nearly $735 million currently due under its revolving lines of credit and approximately $420 million in principal and interest that will be due on or before July 1, 2016 under its outstanding bonds."  (*Id.* (citing Kennedy Maize, *Puerto Rico Utility Moves to Restructure $9B in Debt*, Power, Apr. 11, 2016)).  A separate news article submitted by the Retirement Trust Funds recounts how PREPA's Lisa Donohue, "who has been leading PREPA's turnaround efforts for more than a year," testified at a congressional hearing that PREPA will face litigation similar to the Argentinian debt cases (cases that were litigated in this Court for over a decade) but will face "more of it, because [PREPA] is likely to default on its debts early this year."  (Docket No. 42, Ex. A, at 2-3).

Significantly, as the Court noted in its oral ruling, ERS-PREPA did not really dispute the foregoing facts — reason enough to deny its present motion.  Instead, it "attempt[ed] to distance itself (or more specifically, its interim Administrator) from PREPA, and highlight[] recent developments — principally the restructuring bill proposed in Congress that has as one its goals the avoidance of a 'massive courtroom brawl between different creditors and the government' — that might set a foundation for fiscal recovery in Puerto Rico."  (June 3, 2016 Tr. (Docket No. 62) ("Tr.") 7 (quoting Mary Clare Jalonick, *Puerto Rico Clears First Hurdle With Committee Vote*, Associated Press, May 25, 2016, which was submitted by ERS-PREPA itself)).  In its earlier ruling, however, the Court found that the bill in Congress simply underscored the "substantial possibility, if not probability of litigation — and all-consuming litigation at that" and noted that "[w]hile ERS-PREPA itself may not be the target of [the impending] litigation, it is . . . sufficiently intertwined with PREPA, financially and as a matter of personnel, that, if such litigation were to develop, it would likely be incapable of adequately functioning as lead

7

plaintiff." (Tr. 8). *Cf. In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 456 (S.D. Tex. 2002) ("While FSBA argues that those Plaintiffs asserting conflicts of interest are merely speculating and have no proof, which is required by the statute, to support their allegations, what evidence has been submitted, though largely media articles, leads the Court to find that the information raises more than the mere specter of antagonistic interest and unique defenses to rebut the presumption that FSBA is the most adequate Lead Plaintiff. In good conscience this Court cannot endanger this litigation by ignoring the[se] issues . . . ."). [3]

In short, because ERS-PREPA points to no contrary controlling authority or overlooked data, its motion for reconsideration is DENIED. [4] In its initial brief, ERS-PREPA made a request

---

[3] In its reply brief here, ERS-PREPA contends that the Court should consider even more recent developments that have taken place since the Court's ruling, and points again to the same bill in Congress. (ERS-PREPA's Rearg. Reply 8). That "new evidence" obviously presents no grounds for reconsideration. *See, e.g.*, *Polsby v. St. Martin's Press, Inc.*, No. 97-CV-0690 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000). Moreover, as the Court made clear in its earlier ruling, it is not willing to tie the future of this securities class action to prognostications about what Congress may or may not do. *Cf. Puerto Rico v. Franklin California Tax-Free Trust*, — U.S. —, 2016 WL 3221517, at *12, *17 (June 13, 2016) (Sotomayor, J., dissenting) (criticizing the majority's ruling that denied bankruptcy protections to Puerto Rico's utilities (including PREPA), because "[t]he Commonwealth of Puerto Rico and its municipalities are in the middle of a fiscal crisis" wherein "the combined debt of Puerto Rico's three main public utilities exceeds $20 billion" and while "Congress could step in to resolve Puerto Rico's crisis . . . the government and people of Puerto Rico should not have to wait for possible congressional action to avert the consequences").

[4] ERS-PREPA's contention that the Court's ruling endangers the ability of pension funds to serve as lead plaintiffs generally is overblown. (*See* ERS-PREPA's Rearg. Mem. 14; ERS-PREPA's Rearg. Reply 9). A district court's decision is not binding on any other court. Further, the Court's decision was based on the dire fiscal crisis confronting PREPA and its pension fund and thus limited to its facts. (Moreover, if ERS-PREPA is correct and Congress acts shortly to address the fiscal crisis in Puerto Rico, this case will truly be *sui generis*.) Likewise, the fact that a different Puerto Rican pension fund, the Puerto Rico Teachers' Retirement System, may currently be one member of a group serving as lead plaintiff in a securities class action filed in Louisiana means little or nothing here. (*See* ERS-PREPA's Rearg. Mem. 12-13; ERS-PREPA's Rearg. Reply 2). In that case, the Court appointed the Puerto Rican pension fund to serve as lead plaintiff *jointly* with the Public Employees' Retirement System of Mississippi — and did so nearly six years ago, long before the existence and scope of the fiscal crisis became apparent. *See Bach v. Amedisys, Inc.*, No. CIV.A. 10-395-BAJ-CN, 2010 WL 4318755, at *6 (M.D. La. Oct. 22, 2010); *see also id.* at *4 ("[N]o party has argued that the Mississippi Plaintiffs fail to

that, if reconsideration were denied, the Court "stay the Order to allow ERS to take an immediate appeal to the Second Circuit." (ERS-PREPA's Rearg. Mem. 2). There is no mention of that somewhat offhand request in ERS-PREPA's reply brief, however, so the Court deems it to be abandoned. *See, e.g.*, *Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005). In any event, the request borders on frivolous. For one thing, orders appointing a lead plaintiff under the PSLRA are not immediately appealable. *See Metro Servs. Inc. v. Wiggins*, 158 F.3d 162, 165 (2d Cir. 1998) (dismissing appeal of order appointing lead plaintiff for lack of subject-matter jurisdiction); *accord Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1217-19 (9th Cir. 2000); *Fla. State Bd. of Admin. v. Brick*, 210 F.3d 371 (6th Cir. 2000) (table); *Pindus v. Fleming Cos. Inc.*, 146 F.3d 1224, 1226 (10th Cir. 1998). For another, ERS-PREPA makes no effort whatsoever to establish that the requirements for a stay are met here (*see* ERS-PREPA's Rearg. Mem. 2), and for good reason: They are not.

      The Clerk of Court is directed to terminate Docket No. 57.

      SO ORDERED.

Dated: June 27, 2016
      New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

meet the requirements of Rule 23 or that they should not be appointed as lead plaintiffs except insofar as it has been argued that they should be barred from appointment by the restrictions on professional plaintiffs provision of the PSLRA").

9