UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE S. SCHAFFER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff(s),<br><br>vs.<br><br>HORIZON PHARMA PLC, TIMOTHY P. WALBERT, PAUL W. HOELSCHER, JOHN J. KODY, ROBERT F. CAREY, WILLIAM F. DANIEL, MICHAEL GREY, JEFF HIMAWAN, VIRINDER NOHRIA, RONALD PAULI, GINO SANTINI, H. THOMAS WATKINS, CITIGROUP GLOBAL MARKETS, INC., JEFFERIES LLC, COWEN & COMPANY LLC, AND MORGAN STANLEY & CO. LLC,<br><br>Defendants. | Master File No.: 1:16-cv-01763-JMF<br><br><br>**ORAL ARGUMENT REQUESTED** |

**UNDERWRITER DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS'
CLAIMS UNDER SECTION 11 AND SECTION 12 OF THE SECURITIES ACT**

**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**

Richard A. Rosen, Esq.
1285 Avenue of the Americas
New York, New York 10019-6064
Phone: (212) 373-3000
Email: rrosen@paulweiss.com

*Attorneys for Defendants Citigroup Global Markets, Inc., Jefferies LLC, Cowen & Company LLC, and Morgan Stanley & Co. LLC*

## Table of Contents

Table of Contents ................................................................................................................. i
Table of Authorities ............................................................................................................ ii
PRELIMINARY STATEMENT ......................................................................................... 1
ARGUMENT ....................................................................................................................... 2
    I.    The Horizon Prospectus fully disclosed the material risks that later materialized. ........................................................................................................ 2
    II.    Horizon had no duty to disclose alleged improper practices by several PME pharmacies or allegations that Horizon controlled those pharmacies. ........... 4
    III.    Plaintiffs' claims based on forward-looking statements protected by the safe harbor of the PSLRA should be dismissed. ............................................... 6
    IV.    Plaintiffs fail to state claims under Items 303 and 503 of Regulation S-K. .......... 7
          1.    Item 303. ........................................................................................... 7
          2.    Item 503. ........................................................................................... 9
    V.    Plaintiffs lack standing to assert claims under Section 12 of the Securities Act. ......................................................................................................................... 9
CONCLUSION ................................................................................................................... 10

# Table of Authorities

**Page(s)**

**CASES**

*In re Ariad Pharm., Inc. Sec. Litig.*,
  842 F. 3d 744 (1st. Cir. 2016) ................................................................................................. 9

*Blackmoss Invs. Inc.* v. *ACA Capital Holdings, Inc.*,
  2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) ........................................................................... 8

*Bortel* v. *Friedman*,
  1:04-CV-0051-JEC (N.D. Ga. 2004) .................................................................................... 10

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ............................................................................................ 9, 10

*In re FBR Inc. Secs. Litig.*,
  544 F. Supp. 2d 346 (S.D.N.Y. 2008) .................................................................................... 5

*Ganino* v. *Citizens Utilities Co.*,
  228 F. 3d 154 (2d Cir. 2000) ................................................................................................... 4

*In re Gentiva Sec. Litig.*,
  932 F. Supp. 2d 352 (E.D.N.Y. 2013) ................................................................................. 5, 6

*In re Harman Int'l Indus., Inc. Sec. Litig.*,
  791 F.3d 90 (D.C. Cir. 2015) ................................................................................................... 6

*Harris* v. *Ivax Corp.*,
  182 F.3d 799 (11th Cir. 1999) .................................................................................................. 6

*In re IndyMac Sec. Litig.*,
  1:09-cv-04583-LAK (S.D.N.Y. 2010) .................................................................................. 10

*In re Junei Int'l Holding Ltd. Sec. Litig.*,
  1:14-cv-09826-WHP (S.D.N.Y. Jan. 10, 2017) ..................................................................... 8

*Lapin* v. *Goldman Sachs Grp., Inc.*,
  506 F. Supp. 2d 221 (S.D.N.Y. 2006) ................................................................................. 5, 6

*In re Lions Gate*,
  2016 WL 297722 (S.D.N.Y. Jan. 22, 2016) ........................................................................... 9

*Lopez* v. *Ctpartners Executive Search Inc.*,
  173 F. Supp. 3d 12 (S.DN.Y. 2016) ................................................................................... 7, 8

*In re Morgan Stanley Tech. Fund Sec. Litig.*,
    643 F. Supp. 2d 366 (S.D.N.Y. 2009) ................................................................ 4, 6

*Norfolk Cty. Ret. Sys.* v. *Solazyme, Inc.*,
    2016 WL 7475555 (N.D. Cal. Dec. 29, 2016) ........................................................ 10

*Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015) .......................................................................................... 7

*Panther Partners, Inc.* v. *Ikanos Commc'ns, Inc.*,
    538 F. Supp. 2d 662 (S.D.N.Y. 2008) ..................................................................... 9

*Panther Partners Inc.* v. *Ikanos Commc'ns, Inc.*,
    681 F.3d 114 (2d. Cir. 2012) ................................................................................... 8

*Plumbers' Union Local No. 12 Pension Fund* v.
    *Nomura Asset Acceptance Corp.*,
    658 F. Supp. 2d 299 (D. Mass. 2009) .................................................................. 10

*In re ProShares Trust Sec. Litig.*,
    889 F. Supp. 2d 644 (S.D.N.Y. 2012) ..................................................................... 4

*Rudman* v. *CHC Group Ltd.*,
    2016 WL 6583788 (S.D.N.Y. Nov. 7, 2016) ........................................................... 4

*In re Sanofi Sec. Litig.*,
    155 F. Supp. 3d 386 (S.D.N.Y. 2016) ..................................................................... 5

*Scott* v. *Gen. Motors Co.*,
    46 F. Supp. 3d 387 (S.D.N.Y. 2014) ....................................................................... 4

*Stadnick* v. *Vivint Solar, Inc.*,
    2015 WL 8492757 (S.D.N.Y. Dec. 10, 2015) ......................................................... 8

*In re Sterling Foster & Co., Sec. Litig.*,
    222 F. Supp. 2d 216 (E.D.N.Y. 2002) ................................................................... 10

*Szulik* v. *Tagliaferri*,
    966 F. Supp. 2d 339 (S.D.N.Y. 2013) ..................................................................... 4

*Thomas* v. *Magnachip Semiconductor Corp.*,
    167 F. Supp. 3d 1029 (N.D. Cal. 2016) ................................................................... 9

*In re TVIX Secs. Litig.*,
    25 F. Supp. 3d 444 (S.D.N.Y. 2014) ....................................................................... 4

*Vaccaro* v. *New Sources Energy Partners L.P.*,
    2016 WL 7373799 (S.D.N.Y. Dec. 19, 2016) ......................................................... 8

*Welgus* v. *TriNet Grp., Inc.*,
  2017 WL 167708 (N.D. Cal. Jan. 17, 2017)................................................................10

*In re WorldCom*,
  346 F. Supp. 2d 628 (S.D.N.Y. 2004) ......................................................................9

**STATUTES**

17 C.F.R. § 229.303(a)(3)(ii)........................................................................................7

17 C.F.R. § 229.503(c) .................................................................................................9

**OTHER AUTHORITIES**

Certain Inv. Co. Disclosures, Securities Act Release No. 6835,
  1989 WL 1092885 (May 18, 1989) .............................................................................8

Defendants Citigroup Global Markets, Inc., Jefferies LLC, Cowen & Company LLC, and Morgan Stanley & Co. LLC (the "UWs") respectfully submit this Reply in further support of their Motion to Dismiss Plaintiffs' Securities Act claims in the Amended Complaint.

## PRELIMINARY STATEMENT

Plaintiffs concede that Horizon's Offering Documents disclosed the fundamental risk that actually came to pass—that Horizon's strategy of marketing its high priced generic drugs through specialized pharmacies could suffer setbacks. The alleged "corrective" disclosures that Plaintiffs identify beginning in October 2015 all concern criticisms of—and negative market reactions to—the high prices Horizon was charging for its drugs. But that is the very business strategy Horizon investors knowingly embraced when they purchased the company's securities.

Plaintiffs' effort to change the subject, and to focus instead on details of alleged practices (such as improperly selling drugs across state lines) by some of the pharmacies with which Horizon did business, is nothing but a distraction. Plaintiffs do nothing to link those practices to the reasons that Horizon's stock price dropped and class members lost money. Significantly, Plaintiffs have not even alleged that these purported practices have *ever* been disclosed to the market. In any event, Horizon had no duty to disclose the practices of the companies with which it did some of its business. As to the claim that Horizon secretly "controlled" those pharmacies, as is reflected in Horizon's briefs in this case, Horizon has consistently denied that it ever had such control, and had no reason to anticipate that this inaccurate allegation would be made. Furthermore, Horizon had no duty to disclose this mischaracterization of its vendor relationships.

Plaintiffs also fail to refute the UWs' arguments for dismissal based on forward-looking statements protected by the safe harbor of the PSLRA, for failure to state a claim under Item 303 or 503 of Regulation S-K and for lack of standing to bring Section 12(a)(2) claims.

# ARGUMENT

**I.    The Horizon Prospectus fully disclosed the material risks that later materialized.**

Horizon fully disclosed the material commercial risks to its business model and repeatedly highlighted the possibility that patients, doctors, insurers and others might react negatively to Horizon's strategy of using designated specialty pharmacies to gain market acceptance for aggressive increases of drug prices. (UW Mem. 5–7, 11–12.) Horizon specifically disclosed that its PME program relied on "designated mail order specialty pharmacies" that it hoped would be more insulated from pricing pressure than traditional pharmacies, thereby providing Horizon with the opportunity to execute its plan to increase drug prices. (Ex. A S-5.) But Horizon warned that negative reactions to this structure and strategy could lead to a decline in sales: "If we are unsuccessful in convincing physicians to complete prescriptions through our PME program . . . sales of DUEXIS [] and VIMOVO may suffer." (*Id.* S-34.)

Each of the disclosures on which Plaintiffs rely reflects the materialization of the exact same risks about which investors were amply warned in advance—that Horizon's high price strategy, implemented through its PME program, may not meet expectations.

The October 19, 2015 *New York Times* article focused on Horizon's pricing strategy and the possibility that negative market reactions could lead to formulary exclusions. (Pl. Opp. 46–47; ¶ 114.) The article highlighted concerns that could "discourage [doctors] from prescribing such an expensive drug" as DUEXIS, it noted the "sticker shock" some market participants would have to the prices of Horizon's drugs, it described "government and media scrutiny for . . . huge price increases" of similar drugs from other manufacturers, and it provided details of Horizon's price increases on VIMOVO. (*Id.*) The *Times* even quoted the Offering Documents: "Horizon said in its regulatory filing . . . that if it were unable to get physicians to direct

2

prescriptions to Prescriptions Made Easy, 'We may experience a significant decline in DUEXIS and VIMOVO prescriptions as a result of formulary exclusions.'" (Pl. Ex. 57; Ex. A S-24.)

Similarly, the October 22, 2015 press release by Depomed, Inc.—a specialty pharmaceutical company whose board of directors was fighting a hostile takeover by Horizon at the time—focused on Horizon's "aggressive drug pricing practices", noting concerns with Horizon's "pricing strategies" after Horizon "increased the prices on [DUEXIS] more than tenfold". (Pl. Opp. 47–48; ¶ 119.) The press release concluded: "We believe the frequency and magnitude of Horizon's price increases are unsustainable." (Pl. Ex. 36.)

The November 10, 2015 *New York Times* article described Express Scripts' removal of Linden Care from its network as "a sign of further crackdown on the use of mail-order dispensaries to help lift sales of expensive drugs." (Pl. Opp. 12–13; ¶ 123.) Again, this purported corrective disclosure simply reflects the materialization of the risk Horizon had previously disclosed: that its designated specialty pharmacy structure and strategy of increasing prices could lead to negative reactions from third-party payors. (*See* Ex. A S-48–S-49.)

On April 12, 2016, Horizon announced lower than expected revenues for the first half of 2016 due to "pricing pressure"—the precise risk of which Horizon had already disclosed. (*See* Pl. Opp. 48–49; Ex. A S-5, S-24.) Plaintiffs' own allegations attribute the drop in Horizon's share price to "an incrementally more restrictive payor environment." (¶ 132.) But in the Offering Documents, Horizon had warned of the possibility of "pressure from healthcare payors and [PBMs] to use less expensive generic or over the counter brands instead of branded products". (*See* Ex. A S-5, S-24.)[1]

---

[1] Plaintiffs point to a fifth corrective disclosure announcing a regulatory investigation into the PME program. Pl. Opp. 48; ¶ 127. Plaintiffs admit, however, that Horizon disclosed to investors regulatory risks of the PME program. ¶ 381.

3

In their moving brief, the UWs demonstrated that courts dismiss Securities Act claims when offering documents sufficiently warn investors of the material risks, citing over half a dozen cases.[2] Plaintiffs wholly ignore most of these authorities. In a single footnote, Plaintiffs feebly attempt to distinguish a few of the cases on the conclusory grounds that they concerned "facts not present here". (Pl. Opp. 51 n.33.) To the contrary, these cases concern the precise facts here, where Plaintiffs base Securities Act claims on the materialization of a risk specifically disclosed in the Offering Documents.[3]

## II. Horizon had no duty to disclose alleged improper practices by several PME pharmacies or allegations that Horizon controlled those pharmacies.

Plaintiffs devote many pages to anecdotes about three specialty pharmacies that participated in the PME program and to their claim that Horizon exercised "control" over them. (Pl. Opp. 7–10, 14–43.) These allegations are addressed more fully in Horizon's moving brief and reply brief, which we incorporate by reference here.

Plaintiffs identify several purportedly improper sales practices in which a few of Horizon's business partners engaged, such as shipping prescriptions to other states, giving economic benefits to certain physicians and facilitating sales of drugs for unauthorized uses. But Plaintiffs do not (and cannot) respond to the fundamental point made by UWs in their moving brief: none of these alleged practices have anything to do with the reason Horizon's stock price dropped. Horizon investors lost money because the market reacted negatively to Horizon's attempt to sell its drugs at many multiples of the price at which equivalent medicines could be readily purchased from Horizon's competitors. Plaintiffs fail to respond to the UWs'

---

[2] *See* UW Mem. 9–10 & nn. 13, 14 (citing *In re ProShares Trust Sec. Litig.*, 889 F. Supp. 2d 644, 653 (S.D.N.Y. 2012); *In re TVIX Secs. Litig.*, 25 F. Supp. 3d 444, 453 (S.D.N.Y. 2014); *Scott* v. *Gen. Motors Co.*, 46 F. Supp. 3d 387 (S.D.N.Y. 2014); *In re Morgan Stanley Tech. Fund Sec. Litig.*, 643 F. Supp. 2d 366 (S.D.N.Y. 2009); *Ganino* v. *Citizens Utilities Co.*, 228 F. 3d 154, 162 (2d Cir. 2000); *Rudman* v. *CHC Group Ltd.*, 2016 WL 6583788 at *7 (S.D.N.Y. Nov. 7, 2016); and *Szulik* v. *Tagliaferri*, 966 F. Supp. 2d 339, 362 (S.D.N.Y. 2013)).

[3] *See, e.g.*, *In re TVIX*, 25 F. Supp. 3d at 453.

4

demonstration that facts about these alleged sales practices were immaterial as a matter of law and thus did not need to be disclosed in the Prospectus. (UW Mem. 9–10, 15–17.)

Plaintiffs' Securities Act claims also fail because Horizon had no duty to disclose granular details about the sales practices of pharmacies with which it did business.[4] Revealingly, Plaintiffs resolutely ignore the *Sanofi* decision cited by UWs that is squarely on point.[5] The lengthy Amended Complaint does not even allege that these sales practices became known to the marketplace; they are instead the fruits of Plaintiffs' search for confidential witnesses with something negative to say about pharmacies in the PME program.

That leaves Plaintiffs' allegation that Horizon "controlled" these specialty pharmacies. But, as Horizon's moving and reply briefs demonstrate in detail, Plaintiffs rely solely on unremarkable business dealings between a supplier and its vendors. Horizon had no duty either to characterize these mundane dealings as indicative of "control" or still less to anticipate that Plaintiffs' counsel would try to cast these dealings in the most nefarious possible light and pin a pejorative label on them. Plaintiffs cite cases for the proposition that "a formal adjudication that Horizon engaged in illegal conduct is not required for Plaintiffs to state a claim." (Pl. Opp. n.17.) True, but unresponsive as Plaintiffs have merely pleaded self-serving mischaracterizations of unremarkable events.[6] Regardless, Plaintiffs fail to link these interactions to a material risk to

---

[4] Horizon disclosed that it was "exposed to the risk that our employees [and third parties] may engage in fraudulent or other illegal activity" and that despite adopting an internal code of conduct, "it is not always possible to identify and deter misconduct by our employees and other third parties, and the precautions we take to detect and prevent this activity may not be effective . . . ." (¶381; *see also* ¶¶375, 383.) Courts have found no material misstatement and dismissed Securities Act claims in the face of such risk warnings. *See, e.g.*, *In re FBR Inc. Secs. Litig.*, 544 F. Supp. 2d 346, 362 (S.D.N.Y. 2008).

[5] UW Mem. 17 (citing *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 402–04 (S.D.N.Y. 2016)).

[6] The legal authority Plaintiffs provide only underscores their failure to plead Securities Act claims. *See* Pl. Opp. n.17 (citing *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352 (E.D.N.Y. 2013) ("*Gentiva*") and *Lapin* v. *Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221 (S.D.N.Y. 2006) ("*Lapin*")). *Gentiva* and *Lapin* show that Plaintiffs must specifically allege illegal behavior *by Horizon*, not by a few PME participating pharmacies.

In *Gentiva*, plaintiffs alleged that defendant committed Medicare fraud by providing unnecessary services to patients to receive payment from the government. 932 F. Supp. 2d at 360. Plaintiffs in *Gentiva* specifically alleged practices *by the defendant* that constituted fraud, in opposition to defendant's statement that its practices were "in compliance with [Medicare] standards and regulations" and "clinically appropriate." *Id.* at 369. The

5

Horizon's business—yet another reason why Horizon had no duty to disclose the alleged "facts" about "control" to investors.[7]  Again, Plaintiffs fail to overcome the UWs' explanation that these alleged "facts" were immaterial to Horizon's business.  (UW Mem. 9–10, 15–17.)

### III.   Plaintiffs' claims based on forward-looking statements protected by the safe harbor of the PSLRA should be dismissed.

Plaintiffs' argument that the safe harbor for forward-looking statements is inapplicable requires only a brief rejoinder.  The UWs identified three specific statements in the Offering Documents concerning Horizon's generalized optimism about the future of the PME program.  (UW Mem. 18.)  Plaintiffs do not discuss any of those statements and certainly offer nothing to show that Horizon did not honestly believe the statements when they were made.  Coupled with the robust risk disclosures described above and in our opening brief, the three statements are entitled to safe harbor protection.[8]

Instead, Plaintiffs discuss various statements that are outside the Offering Documents altogether (and thus irrelevant to the Securities Act claims).  And they also describe certain statements of objective present fact about the PME program (¶¶ 373, 374, 379) that are not *themselves* alleged to be false at all, but which Plaintiffs say should have been *supplemented* with other alleged "facts" about sales practices and Horizon's "control"—none of which has anything to do with the safe harbor.

---

complaint in *Gentiva* was supported by accounts of nine witnesses *employed at Gentiva*, who "describe[d] how *Gentiva executives* knew of and *themselves* applied pressure on Gentiva clinicians and managers . . . to violate Medicare rules in order to increase Medicare payments."  *Id.* at 359–60 (emphases added).
   In *Lapin*, plaintiffs alleged that defendant misrepresented conflicts of interest between defendant's security analysts and their investment banking clients.  506 F. Supp. 2d at 228–30.  The alleged behavior in *Lapin* was carried out solely by the defendant's own employees.

[7] *See generally In re Morgan Stanley Tech. Fund Sec. Litig.*, 643 F. Supp. 2d 366 (S.D.N.Y. 2009).
[8] Horizon does not need to disclose *every* potential risk (or even the risk that ultimately materialized) to be protected by the safe harbor.  *See In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 103 (D.C. Cir. 2015) (quoting *Harris* v. *Ivax Corp.*, 182 F.3d 799, 807 (11th Cir. 1999) ("[T]he cautionary language need not necessarily 'mention the factor that ultimately belies a forward-looking statement' . . . [or] warn of 'all' important factors, so long as 'an investor has been warned of risks of a significance similar to that actually realized.'")).

Further, Plaintiffs ignore the fact that the Securities Act portion of the Amended Complaint specifically *disavows* allegations of intentional misconduct.[9]  Plaintiffs cannot have it both ways; because they must allege that any forward-looking statements were made with actual knowledge of their falsity, they have pled themselves out of court by "disclaim[ing] any allegation sounding in fraud or deception."[10]

IV.  **Plaintiffs fail to state claims under Items 303 and 503 of Regulation S-K.**

   1.  **Item 303.**

Item 303 of Regulation S-K requires registrants to disclose "known trends or uncertainties" that the company "reasonably expects" to materially impact sales, revenues, or income.[11]  The Amended Complaint failed to identify either a known negative trend or event *existing at the time of the Offering*.  (UW Mem. 20–21.)  Plaintiffs' brief identifies only one "trend:" "that [a] shifting payor environment had been in place for *nine months* before the Offering" when two PBMs excluded DUEXIS and VIMOVO from their formularies.  (Pl. Opp. 53–54 n.35, ¶¶ 9, 52.)  But *Horizon disclosed these events in the Offering Documents*, thus satisfying any potential obligation to disclose "trends."[12]

That leaves the duty to disclose known "uncertainties."  Plaintiffs say that Horizon faced uncertainty attributable to existing market hostility to the prices being changed for its best-selling drugs.  But that "uncertainty" was fully and painstakingly disclosed in the Offering Documents (including the fact that two PBMs had recently placed Horizon's key products on their exclusion lists).[13]  Investors knew that the company's results would decline if Horizon suffered setbacks—

---

[9] In their Securities Act claims, "Plaintiffs exclude allegations that could be construed as alleging fraud or intentional misconduct, as this Count is based solely on claims of strict liability and/or negligence." (¶399.)
[10] *Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015).
[11] *See* 17 C.F.R. § 229.303(a)(3)(ii).
[12] *See, e.g.*, Ex A S- 24, S-48; Ex B p. 3, p. 41; Ex. C p. 30.  Horizon had no obligation under Item 303 to go further and make the pejorative disclosures Plaintiffs request.  *See Lopez* v. *CT Partners Exec. Search, Inc.*, 173 F. Supp. 3d 12, 35 (S.D.N.Y. 2016) (holding that Item 303 does not require an issuer to make pejorative statements about its own business).
[13] *See, e.g.*, Ex A S-24, S-48; Ex. C p. 30.

for whatever reason—in its attempts to insulate itself through the PME program from generic competition and to create adequate incentives for doctors and patients to use Horizon's high priced drugs. Horizon was not under a duty to foresee and to disclose as an "uncertainty" all the precise facts and circumstances that might give rise to that potential negative reaction, or to speculate about exactly what criticisms others in the marketplace might articulate.[14]

As this Court recently explained, registrants are not required to "speculatively anticipat[e] a future event" under Item 303's mandate to disclose known uncertainties.[15] Moreover, "Item 303's requirement of knowledge requires that [a Section 11 plaintiff relying on Item 303] plead, with some specificity, facts establishing that the defendant had actual knowledge" of the trend or uncertainty.[16] It is not enough to ascribe significance to business practices with the benefit of 20/20 hindsight, as Plaintiffs do. Thus, courts have dismissed Item 303 claims that—as in this case—"'ask the Court to assume that Defendants *must* have known because something did in fact occur later' as 'simply inadequate pleading.'"[17]

---

[14]   The speculative possibilities identified by Plaintiffs stand in sharp contrast to the concrete examples of known business uncertainties that the SEC has itself recognized as giving rise to a disclosure duty under Item 303:
  For example, a registrant may know that a material government contract is about to expire. The registrant may be uncertain as to whether the contract will be renewed, but nevertheless would be able to assess facts relating to whether it will be renewed. More particularly, the registrant may know that a competitor has found a way to provide the same service or product at a price less than that charged by the registrant, or may have been advised by the government that the contract may not be renewed. The registrant also would have factual information relevant to the financial impact of non-renewal upon the registrant. In situations such as these, a registrant would have identified a known uncertainty reasonably likely to have material future effects on its financial condition or results of operations, and disclosure would be required.
  In the following example, the registrant discloses the reasonably likely material effect of a known uncertainty regarding implementation of recently adopted legislation. The Company had no firm cash commitments as of December 31, 1987 for capital expenditures. However, in 1987, legislation was enacted which may require that certain vehicles used in the Company's business be equipped with specified safety equipment by the end of 1991. Pursuant to this legislation, regulations have been proposed which, if promulgated, would require the expenditure by the Company of approximately $30 million over a three-year period.
Mgmt. Discussion & Analysis of Fin. Condition & Results of Operations; Certain Inv. Co. Disclosures, Securities Act Release No. 6835, 1989 WL 1092885 (May 18, 1989).

[15]   *Lopez*, 173 F. Supp. 3d at 36.

[16]   *Blackmoss Invs. Inc.* v. *ACA Capital Holdings, Inc.*, 2010 WL 148617, at *9 (S.D.N.Y. Jan. 14, 2010).

[17]   *In re Junei Int'l Holding Ltd. Sec. Litig.*, 1:14-cv-09826-WHP, at 8 (S.D.N.Y. Jan. 10, 2017) (quoting *Panther Partners, Inc.* v. *Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 673 (S.D.N.Y. 2008)); accord *Vaccaro* v. *New Sources Energy Partners L.P.*, 2016 WL 7373799, at *7 (S.D.N.Y. Dec. 19, 2016); *Stadnick* v. *Vivint Solar, Inc.*, 2015 WL 8492757, at *13 (S.D.N.Y. Dec. 10, 2015).

Plaintiffs cite only one case to support their Item 303 claim, *Panther Partners Inc.* v. *Ikanos Communications, Inc.*, 681 F.3d 114 (2d. Cir. 2012). (Pl. Opp. 53.) This case actually undermines Plaintiffs' argument. Prior to its offering, the defendant company in *Panther Partners* had become aware of a defect in the company's semiconductor chips (their primary product) and had received a number of complaints from customers about the chips, making the prospect of a recall—which occurred shortly after the conclusion of the offering—highly foreseeable. 681 F.3d at 116–17. No such knowledge of a concrete imminent business risk or its likely consequences is pleaded here.

    **2.**    **Item 503.**

Item 503 requires that certain filings disclose "the *most significant* factors that make the offering speculative or risky."[18] Horizon did so. Plaintiffs' invocation of *In re WorldCom*[19] is misplaced. Plaintiffs there identified a clearly material and presently existing risk—that the company was not cash-flow positive and had no ability to satisfy its debt burden—that the company knew about but did not disclose.[20] By contrast, the "most significant" risk factors for Horizon were that the market would not accept its high prices for generic products despite its sales through the PME program. Those risks were fully disclosed.

**V.**    **Plaintiffs lack standing to assert claims under Section 12 of the Securities Act.**

Plaintiffs' vague allegations regarding Lead Plaintiff's purchase of securities are just like those that courts have found insufficient to plead Section 12 standing. (UW Mem. 23–25.)[21]

---

[18] *In re Lions Gate*, 2016 WL 297722, at *15 (S.D.N.Y. Jan. 22, 2016) (citing 17 C.F.R. § 229.503(c)) (emphasis added).
[19] 346 F. Supp. 2d 628 (S.D.N.Y. 2004); Pl. Opp. 54.
[20] *In re WorldCom*, 346 F. Supp. 2d at 697.
[21] The First Circuit, joining the Fourth and Ninth Circuits, recently reaffirmed that "mere general allegations that [Plaintiff's] shares are traceable to the offering in question are [not] sufficient to avoid dismissal." *In re Ariad Pharm., Inc. Sec. Litig.*, 842 F. 3d 744, 755–56 (1st. Cir. 2016). *See also In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107–08 (9th Cir. 2013) ("When a company has issued shares in multiple offerings . . . a greater level of factual specificity will be needed . . . . Here, plaintiffs' allegations remain stuck in 'neutral territory,' because they do not tend to exclude the possibility that their shares came from the pool of previously issued shares.") (internal citations omitted). *Accord*, *Thomas* v. *Magnachip Semiconductor Corp.*, 167 F. Supp.

9

Lead Plaintiff has access to its own records concerning its purchases and could easily have put this issue to rest if the facts helped its case. Conspicuously, it has not done so. *See Plumbers' Union Local No. 12 Pension Fund* v. *Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299, 305 (D. Mass. 2009), *aff'd in part, vacated in part on other grounds*, 632 F. 3d 762 (1st Cir. 2011) ("[Plaintiffs must] squarely allege that the securities at issue were purchased in a public offering . . . . If plaintiffs did in fact purchase the Certificates directly *from the defendants*, they should have said so. An evasive circumlocution does not suffice as a substitute.") (emphasis added); *In re Sterling Foster & Co., Sec. Litig.*, 222 F. Supp. 2d 216, 245–46 (E.D.N.Y. 2002) (dismissing claim for failure to state explicitly whether purchases were made in the offering or in the secondary market).[22]

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the UWs' Memorandum in Support of Their Motion to Dismiss and in Horizon's briefs, this Court should grant the UWs' motion and dismiss Plaintiffs' Amended Complaint against the UWs with prejudice.

---

3d 1029, 1055 (N.D. Cal. 2016) (finding assertion that plaintiff purchased shares for the same price and on the same day as Secondary Offering insufficient because such allegations do not dispel "the obvious alternative explanation . . . that they could instead have come from the pool of previously issued shares") (citing *In re Century Aluminum Co.*, 729 F. 3d at 1107–08) (internal quotation marks omitted). *See also Norfolk Cty. Ret. Sys.* v. *Solazyme, Inc.*, 2016 WL 7475555, at *4–5 (N.D. Cal. Dec. 29, 2016) (finding plaintiffs' "conclusory" allegation that it purchased stock "traceable to" the offering insufficient); *Welgus* v. *TriNet Grp., Inc.*, 2017 WL 167708, at *18 (N.D. Cal. Jan. 17, 2017) (holding plaintiff's claim to have purchased "pursuant to and traceable to" the offering insufficient).

[22] Plaintiffs cite two cases to support standing under Section 12, but these cases undermine Plaintiffs' argument because the plaintiffs there provided the necessary detail that Plaintiffs here omit. In *Friedman*, the plaintiff alleged that he "purchased Friedman's securities *in the September Offering* and *on the open market*." *Bortel* v. *Friedman*, 1:04-CV-0051-JEC (N.D. Ga. 2004) Complaint [Dct. No. 1] at 8 (emphases added). In *IndyMac*, the plaintiffs provided in their certification not just the date of purchase, the cost per share, and the number of securities purchased but also the individual name and CUSIP for each security. *In re IndyMac Sec. Litig.*, 1:09-cv-04583-LAK (S.D.N.Y. 2010), Complaint [Dct. No. 131] Ex. A.

Dated: January 27, 2017				Respectfully submitted,

						**PAUL, WEISS, RIFKIND,**
						**WHARTON & GARRISON LLP**

						By:  */s/ Richard A. Rosen*
						Richard A. Rosen
						1285 Avenue of the Americas
						New York, New York 10019-6064
						Phone:  (212) 373-3000
						Email:  rrosen@paulweiss.com

						*Attorneys for Defendants Citigroup Global Markets, Inc., Jefferies LLC, Cowen & Company LLC, and Morgan Stanley & Co. LLC*