UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
GEORGE S. SCHAFFER, Individually and on : Civil Action No. 1:16-cv-01763-JMF
Behalf of All Others Similarly Situated, :
                                         :
                    Plaintiff,           :
                                         : **ORAL ARGUMENT REQUESTED**
         vs.                             :
                                         :
HORIZON PHARMA PLC, TIMOTHY P.           :
WALBERT, PAUL W. HOELSCHER, JOHN         :
J. KODY, ROBERT F. CAREY, WILLIAM F.     :
DANIEL, MICHAEL GREY, JEFF               :
HIMAWAN, VIRINDER NOHRIA,                :
RONALD PAULI, GINO SANTINI, H.           :
THOMAS WATKINS, CITIGROUP                :
GLOBAL MARKETS, INC., JEFFERIES          :
LLC, COWEN & COMPANY LLC, AND            :
MORGAN STANLEY & CO. LLC,                :
                                         :
                    Defendants.          :
---------------------------------------------------------------x

**REPLY IN SUPPORT OF THE HORIZON DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT**

## Table of Contents

|   |   |   |   | Page |
|---|---|---|---|---|
| I. | Introduction | | | 1 |
| II. | Argument | | | 2 |
| | A. | Plaintiffs Fail to State a Claim Under the Exchange Act | | 2 |
| | | 1. | The Complaint Fails to Plead a Strong Inference of Scienter | 2 |
| | | 2. | The Complaint Fails to Adequately Allege Falsity | 5 |
| | | | a. Plaintiffs fail to plead particularized facts to support the alleged wrongdoing | 5 |
| | | | b. The Complaint fails to allege an actionable false or misleading statement | 7 |
| | | 3. | The Complaint Fails to Plead Loss Causation | 8 |
| | B. | Plaintiffs Fail to State a Claim Under the Securities Act | | 10 |
| III. | Conclusion | | | 10 |

# Table of Authorities

Page

**Cases**

*Acticon AG v. China N.E. Petrol. Holdings Ltd.*,
  692 F.3d 34 (2d Cir. 2012)..................................................................................................9

*In re: Altisource Portfolio Solutions., S.A. Sec. Litig.*,
  2015 WL 12001262 (S.D. Fla. Sept. 4, 2015) ......................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................................9

*In re Bausch & Lomb, Inc. Sec. Litig.*,
  941 F. Supp. 1352 (W.D.N.Y. 1996) ....................................................................................4

*In re BioScrip, Inc. Sec. Litig.*,
  95 F. Supp. 3d 711 (S.D.N.Y. 2015).....................................................................................2

*Bondali v. Yum! Brands, Inc.*,
  620 F. App'x 483 (6th Cir. 2015) .........................................................................................8

*Brophy v. Jiangbo Pharm., Inc.*,
  781 F.3d 1296 (11th Cir. 2015) ............................................................................................3

*City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*,
  388 F. Supp. 2d 932 (S.D. Ind. 2005) ...................................................................................3

*Cortina v. Anavex Life Scis. Corp.*,
  2016 WL 7480415 (S.D.N.Y. Dec. 29, 2016) .............................................................2, 3, 5

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)..................................................................................................8

*In re FBR Inc. Sec. Litig.*,
  544 F. Supp. 2d 346 (S.D.N.Y. 2008)...................................................................................8

*Galati v. Commerce Bancorp, Inc.*,
  2005 WL 3797764 (D.N.J. Nov. 7, 2005) ............................................................................8

*In re Gentiva Sec. Litig.*,
  971 F. Supp. 2d 305 (E.D.N.Y. 2013) ..................................................................................6

*In re IMAX Sec. Litig.*,
  272 F.R.D. 138 (S.D.N.Y. 2010) ........................................................................................10

*In re IMAX Sec. Litig.*,
  587 F. Supp. 2d 471 (S.D.N.Y. 2008)...................................................................................3

## Table of Authorities
(Continued)

Page

*Janbay v. Canadian Solar, Inc.*,
  2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) .................................................................9

*Katyle v. Penn Nat'l Gaming, Inc.*,
  637 F.3d 462 (4th Cir. 2011) ........................................................................................10

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
  897 F. Supp. 2d 168 (S.D.N.Y. 2012) .............................................................................9

*Lapin v. Goldman Sachs Grp., Inc.*,
  506 F. Supp. 2d 221 (S.D.N.Y. 2006) .............................................................................7

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005) ...........................................................................................8

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ........................................................................................5

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) ......................................................................................8

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) ......................................................................................4

*New Jersey Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
  2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010) ...............................................................10

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
  455 F. App'x 10 (2d Cir. 2011) ......................................................................................3

*In re Omnicom Grp., Inc. Sec. Litig.*,
  2005 WL 735937 (S.D.N.Y. Mar. 30, 2005) ..................................................................4

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
  645 F. Supp. 2d 210 (S.D.N.Y. 2009) .............................................................................9

*RSM Prod. Corp. v. Fridman*,
  643 F. Supp. 2d 382 (S.D.N.Y. 2009) .............................................................................6

*In re Sanofi Sec. Litig.*,
  155 F. Supp. 3d 386 (S.D.N.Y. 2016) .........................................................................7, 8

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
  531 F.3d 190 (2d Cir. 2008) ...........................................................................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .......................................................................................................4

# Table of Authorities
(Continued)

**Page**

*In re Van der Moolen Holdings N.V. Securities Litigation*,
  405 F. Supp. 2d 388 (S.D.N.Y. 2005) .................................................................................. 8

*In re WorldCom, Inc. Sec. Litig.*,
  2003 WL 22533398 (S.D.N.Y. Nov. 7, 2003) ...................................................................... 7

**Other Authorities**

Fed. R. Civ. P. 8(a) ................................................................................................................. 2, 9

Fed. R. Civ. P. 9(b) .................................................................................................................... 9

Defendants Horizon Pharma plc, Timothy P. Walbert, Paul W. Hoelscher, John J. Kody, Robert F. Carey, William F. Daniel, Michael Grey, Jeff Himawan, Virinder Nohria, Ronald Pauli, Gino Santini, and H. Thomas Watkins (collectively, the "Horizon Defendants") respectfully submit this Reply in further support of their Motion to Dismiss Plaintiffs' Amended Consolidated Complaint.

I.   INTRODUCTION

Like their Complaint, Plaintiffs' opposition brief (the "Opposition") is a patchwork of speculative and nonspecific allegations, pasted together with innuendo. Plaintiffs insist that Horizon did *something* "illegal" or "improper" or "illicit." These adjectives punctuate the Opposition. But pejoratives alone don't state a claim under the federal securities laws, nor do they cover up the numerous defects in the Complaint.

The crux of this case is whether Horizon deceived investors about Prescriptions-Made-Easy ("PME")—a patient support program developed to mitigate managed care's interference with physicians' prescribing decisions and with patient access to Horizon's primary care medicines. Notably, Plaintiffs do not (and cannot) dispute: (1) that, during the Class Period, Horizon fully described and repeatedly disclosed the program to investors; (2) that, in 2015 (when Horizon accelerated its use of PME), net sales of Horizon's products in the program increased substantially; or (3) that, Horizon warned investors of risks (e.g., "*pressure from payers*") associated with PME that later materialized. *See* Dkt. Nos. 110 at 5 n.5, 7 ("Opening Brief" or "MTD") and 112-8 (Exh. A).

Instead, seeking to capitalize on well-publicized disputes with pharmacy benefit managers and the associated negative publicity, Plaintiffs contend that Horizon misled investors by failing to disclose allegedly "improper sales and marketing techniques" and "control" over various pharmacies, thereby rendering the Company's PME business model unsustainable. But,

1

as set forth in the Opening Brief and reiterated here, these claims (of widespread misconduct) are based on a loose compilation of unwarranted inferences and overstated "facts," most having nothing to do with **Horizon**.  And, while the Opposition insists that the "truth" about Horizon's alleged scheme leaked out in five "partial disclosures," only a tortured reading of those disclosures can support Plaintiffs' story.

## II.   ARGUMENT

### A.   Plaintiffs Fail to State a Claim Under the Exchange Act.

#### 1.   The Complaint Fails to Plead a Strong Inference of Scienter.

The Opposition "relies on a smattering of circumstantial theories in the hope that one provides an inference of scienter."  *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 738 (S.D.N.Y. 2015).  None do, and even considered collectively, they fail to support a strong inference of scienter.[1]

**Core operations.**  Plaintiffs begin with the assertion that scienter can be inferred because PME was "vital" to Horizon's business.  Opp. 36–38.  But, there is "considerable doubt" whether the "core operations" doctrine even exists in this Circuit, and "many courts have held that it is no longer valid."  *Cortina v. Anavex Life Scis. Corp.*, 2016 WL 7480415, at *7 (S.D.N.Y. Dec. 29, 2016).  Further, even if such allegations could play a supplementary role, plaintiffs must still allege *facts* "available to Defendants that would have illuminated the falsities."  *BioScrip*, 95 F.

---

[1] Plaintiffs argue in a footnote that, regardless of whether they have adequately pled scienter as to the Individual Defendants, their claims should be allowed to proceed against Horizon because the Complaint "identifies one or more management-level employees with scienter."  Opp. 35 n.23.  It's unclear whom Plaintiffs are even referring to here.  Such allegations are impossible to defend against and fall short of even the minimal, notice-pleading requirements of Rule 8(a).

Supp. 3d at 738 (citation omitted).² And, they must do so for "each defendant." *Cortina*, 2016 WL 7480415, at *9. There are no such factual allegations here. MTD 24–26.

**Monitoring.** Plaintiffs' "monitoring" allegations also highlight this deficiency. Opp. 38–39. The Opposition asserts that "Horizon managers" worked closely with PME pharmacies, which "gives rise to an inference of scienter." Opp. 38. But there are no facts pled to suggest that these "managers" ever observed any abuses, much less conveyed their observations to the Individual Defendants. *See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 196 (2d Cir. 2008) ("[W]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."). The Complaint's lone allegation that *one* defendant (Mr. Hoelscher) may have visited a pharmacy on *one* occasion to do *who-knows-what* (¶78) says absolutely nothing about what he knew, when he learned it, or from whom.

**Subpoena.** In a similar vein, Horizon's receipt of a government subpoena "falls well short of notice of wrongdoing." *City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*, 388 F. Supp. 2d 932, 949 (S.D. Ind. 2005). The Complaint does not contain any facts about the investigation's scope, much less any Individual Defendant's knowledge. And, the mere existence of an investigation "does not equip a reviewing court to explain which inferences might be available beyond a general suspicion of wrongdoing." *Brophy v. Jiangbo Pharm., Inc.*, 781 F.3d 1296, 1303–04 (11th Cir. 2015); *see Cortina*, 2016 WL 7480415, at *8 (two government investigations did not give rise to a compelling inference of scienter where "the

---

² Plaintiffs' own authority is in accord. *See New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 13 (2d Cir. 2011) (noting that three witnesses either provided information to defendants directly or participated in meetings where they heard defendants informed by others about the company's alleged inventory management problems); *In re IMAX Sec. Litig.*, 587 F. Supp. 2d 471, 483 (S.D.N.Y. 2008) (noting "existence of extensive documentation . . . and the IMAX defendants' knowledge of, or access to, those documents").

precise nature and outcomes of the investigations" were unclear).  Indeed, to this day, there has never been a finding of wrongdoing.

**Participation.**  Plaintiffs argue that Horizon "directed" or "acquiesced" in the alleged abuses, which gives rise to an inference of scienter.  Opp. 39–40.  But the only reference to an Individual Defendant here is Mr. Walbert's attendance at sales conferences where Horizon told its employees "to develop strong relationships with doctors."  ¶¶105–06, 108.  This allegation could not be more innocuous.

**Motive.**  Lastly, Plaintiffs insist that the prospect of big bonuses motivated the Individual Defendants to commit fraud.  Opp. 42–43.  But courts in this Circuit refuse to treat incentive compensation—even large or "unusual" incentive compensation—as evidence of scienter.  *See, e.g.*, *In re Omnicom Grp., Inc. Sec. Litig.*, 2005 WL 735937, at *12 (S.D.N.Y. Mar. 30, 2005) ("highly unusual compensation" package did not show motive).  Defendants cited a half dozen cases for this proposition in their Opening Brief, and Plaintiffs make no attempt to distinguish any of them.  MTD 24 & n.21.[3]

The Opposition also glosses over the *lack* of suspicious stock transactions, which "weighs against inferring scienter."  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1253 (11th Cir. 2008).  Plaintiffs urge the Court to ignore this detail because they do not "rely" on an insider trading theory.  Opp. 43 n.28.  But *Tellabs* instructs courts to consider all potential inferences—not just those that favor plaintiffs.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  And, the fact that no Individual Defendant is alleged to have sold stock when the

---

[3] The one case from this Circuit that Plaintiffs do cite is inapposite: ***it does not even reach the issue of motive***.  *In re Bausch & Lomb, Inc. Sec. Litig.*, 941 F. Supp. 1352, 1362 n.2 (W.D.N.Y. 1996) ("My finding that the complaint sufficiently alleges conscious or reckless behavior by defendants makes it unnecessary to consider whether it also adequately alleges motive and opportunity to commit fraud.").

price was supposedly inflated suggests "there was no insider information from which to benefit." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008); *see also Cortina*, 2016 WL 7480415, at *6 ("Notably, Plaintiffs make no allegation that any Defendant sold shares during the Class Period.").

### 2. The Complaint Fails to Adequately Allege Falsity.

As the Opening Brief explains, Plaintiffs' entire case is premised upon the Horizon Defendants' alleged failure to disclose pervasive misconduct in connection with PME. MTD 11–17. Plaintiffs, however, have not adequately alleged that any of the wrongdoing (*i.e.*, supposed "illegal sales and marketing" tactics and Horizon's "control" over pharmacies) actually occurred, much less that it was so widespread as to render any statement by Defendants false or misleading when made. *See Cortina*, 2016 WL 7480415, at *4 (dismissing claim on the ground that the plaintiffs failed to adequately allege the scheme defendants supposedly concealed). In addition, many statements that Plaintiffs challenge as false are not actionable as a matter of law.

### a. Plaintiffs fail to plead particularized facts to support the alleged wrongdoing.

Again, the foundation for the entire Complaint is that Horizon supposedly hid "improper" pharmacy relationships and "illegal" sales tactics. There are, however, no particularized facts to suggest that any Horizon Defendant engaged in (or even endorsed) anything illegal or improper, much less that there was some widespread, covert scheme of wrongdoing. For example:

- The Opposition accuses Horizon of "using gifts to develop conflict-ridden relationships with doctors." Opp. 3 (citing ¶¶104–07). There are, however, no well-pled facts in the Complaint to support this charge. Plaintiffs do not identify a single illegal or improper gift to any doctor, much less a widespread scheme of kickbacks. Rather, the Complaint touts a single surgeon (Dr. Yee) who allegedly spoke at the

5.

   Company's 2014 National Sales Meeting and, during that year, received $18,000 from Horizon (which was publicly disclosed). Plaintiffs then speculate (as opposed to pleading facts) that an unidentified Horizon sales representative's $600K income "could be attributed to his relationship with Dr. Yee, which included spending weekends hunting together." This is not enough.

- The Opposition also accuses Horizon of "promoting . . . drugs for off-label uses." Opp. 3. (citing ¶¶110–11). But this hinges almost exclusively on the confusion of a single salesperson in Texas, who supposedly questioned why the Company was marketing DUEXIS to orthopedic surgeons and podiatrists. The short answer: those doctors treat osteoarthritis and rheumatoid arthritis—*i.e.*, the two FDA-indicated conditions for DUEXIS. MTD 17 n.13.

- The Opposition contends that Horizon was responsible for "illegally shipping drugs into states where the pharmacies were not licensed." Opp. 3 (citing ¶¶94–95). Again, however, Plaintiffs do not plead particularized facts to support this conclusion. Instead, the Complaint only contains purported email conversations among two Halsted employees *from 2014* (before the Class Period), along with allegations from another complaint that ***does not even mention Horizon***.[4]

---

[4] It is questionable whether a plaintiff may even rely on facts derived from a prior private complaint that was never adjudicated on the merits. *See In re Gentiva Sec. Litig.*, 971 F. Supp. 2d 305, 322 (E.D.N.Y. 2013) (citing *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009).

### b. The Complaint fails to allege an actionable false or misleading statement.

What's more, even if Plaintiffs had sufficiently alleged a pervasive scheme of underlying misconduct, the statements that Plaintiffs identify as false or misleading are not actionable as a matter of law. *See* MTD at 18–23.[5] For example:

**Statements about "independent" pharmacies.** The Opposition contends that Defendants' statements about pharmacy independence and "non-exclusive" relationships were false and misleading because Horizon "closely monitored" the pharmacies in its network and exercised some nebulous concept of control. Opp. 16. But no reasonable investor would adopt such a crabbed view. *See In re: Altisource Portfolio Solutions., S.A. Sec. Litig.*, 2015 WL 12001262, at *5–6 (S.D. Fla. Sept. 4, 2015) (allegations that companies shared senior managers, that c-level executives were "running the things together," and that meetings involved both entities, did not render statements about the companies' independence false or misleading).[6] Plaintiffs do not (and cannot) allege that Horizon owned any pharmacy. Nor do they allege that any pharmacy is prohibited from filling other companies' scripts.

**Statements about "differentiated products" and "well-trained" staff.** Plaintiffs also argue that Horizon assumed a duty to disclose the alleged improprieties when it attributed PME's success to "legitimate" factors, such as "differentiated products" and "well-trained" staff. Opp. 17, 30. Plaintiffs are wrong. Nothing in the Complaint demonstrates that Horizon's products

---

[5] Plaintiffs do not contest that "the securities laws do not impose a general duty to disclose . . . uncharged criminal conduct." *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 403 (S.D.N.Y. 2016).

[6] This case is nothing like *Lapin* or *Worldcom* (Opp. 16), which involved prohibited conflicts of interest by securities analysts. *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 240 (S.D.N.Y. 2006) (statements that a firm's own analysts provided "truly independent investment research" were misleading in light of conflicts of interest); *In re WorldCom, Inc. Sec. Litig.*, 2003 WL 22533398, at *2 (S.D.N.Y. Nov. 7, 2003) (alleging "illicit quid pro quo arrangement" between an analyst and WorldCom).

were not differentiated, that Horizon's staff was not well-trained, or that these factors did not contribute to the success of PME.  Additionally, such statements are not actionable because they are too vague and subjective to influence reasonable investors.  *Galati v. Commerce Bancorp, Inc.*, 2005 WL 3797764, at *4 (D.N.J. Nov. 7, 2005) (positive remarks about bank's "unique business model" and "convenience" were not materially false statements despite non-disclosure of bank's alleged criminal conduct), *aff'd,* 220 F. App'x 97 (3d Cir. 2007).

**Statements regarding compliance with laws and regulations.**  The Opposition also claims that Horizon "assur[ed]" investors it was compliant with laws and regulations.  Opp. 15.  Not so.  Horizon warned repeatedly that it was subject to laws and regulations; that it was exposed to the risk of employee or vendor misconduct, and that its precautionary measures may not be effective.  ¶¶182–83.  No reasonable investor would interpret such statements as an "assur[ance]" of present compliance.  *See, e.g.*, *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 491 (6th Cir. 2015).[7]  As for "touting" its code of ethics (Opp. 32), Horizon did no such thing.  It simply announced the code's existence, which is "not actionable under the securities laws."  *See In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 401 (S.D.N.Y. 2016) (citing *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 205–06 (2d Cir. 2009)).

3.   **The Complaint Fails to Plead Loss Causation**

Loss causation analysis asks the following question: "[D]id the relevant truth eventually come out and thereby cause the plaintiffs to suffer losses?"  *Meyer v. Greene*, 710 F.3d 1189, 1197 (11th Cir. 2013) (citing *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 n.4 (2d Cir.

---

[7] "[C]autionary statements . . . have only rarely been found to be actionable by themselves."  *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 360 (S.D.N.Y. 2008).  The generic warnings at issue here are a far cry from those in *In re Van der Moolen Holdings N.V. Securities Litigation*, 405 F. Supp. 2d 388, 415 (S.D.N.Y. 2005), which detailed numerous specific trading practices prohibited by law that the company was contemporaneously engaged in.

2005)).  Plaintiffs claim that the "truth" about PME leaked out in five "partial" disclosures.  Opp. 46–49.  But none of these "disclosures" revealed any relevant truth about purportedly "illegal sales tactics" or "improper" pharmacy "control."[8]

The October 19, 2015 *New York Times* article did not "disclose anything about the alleged scheme."  *Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 177 (S.D.N.Y. 2012).  It focused on Horizon's pricing strategy and the attendant risks.  Exh. 57.  So too did Depomed's October 22, 2015 press release.  Exh. 36.  As our Opening Brief explained, Horizon made detailed disclosures on these topics throughout the Class Period.  Exh. A. "Because all relevant information was already available to investors, these purported disclosures cannot possibly be 'corrective.'"  *Kuriakose*, 897 F. Supp. 2d at 177.

Plaintiffs contend that Express Scripts' November 10, 2015 termination of Linden Care from its network represented a materialization of the risk that PBMs would take adverse action against Horizon.  Opp. 47.  Even if true, however, that simply reflected the materialization of risks Horizon had *previously disclosed*: that Horizon could face pressure due to PME and that pharmacies dispensing its products could lose contracts with PBMs.  Ex. A.

Horizon's February 29, 2016 announcement that it had received a subpoena from the DOJ was "too vague" to have a corrective effect.  *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 231 (S.D.N.Y. 2009).  Even if such a disclosure might be "corrective" in some cases, it must "reveal more than just the existence of a subpoena.  It must link the subpoena . . . to the actual fraudulent conduct alleged in the complaint."  *Janbay v.*

---

[8] The Second Circuit has yet to decide whether Rule 8(a) or Rule 9(b) governs loss causation. *Acticon AG v. China N.E. Petrol. Holdings Ltd.*, 692 F.3d 34, 37–38 (2d Cir. 2012).  Regardless of the standard, Plaintiffs must still allege sufficient non-conclusory factual matter to make their claims "plausible," as opposed to merely "possible."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

*Canadian Solar, Inc.*, 2012 WL 1080306, at *15 (S.D.N.Y. Mar. 30, 2012).  Here, there is no way Horizon's opaque reference to the investigation's scope—"our patient assistance programs and other aspects of our marketing and commercialization activities"—could have placed investors on notice of the "type of specific fraudulent . . . practices that [P]aintiffs allege." *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 149 (S.D.N.Y. 2010).

Lastly, Horizon's April 12, 2016 announcement of lower-than-expected sales had nothing to do with "captive" pharmacies or "illegal" sales tactics.  Plaintiffs' suggestion otherwise is speculation and conjecture, which, "in the context of market prognostication does not suffice to establish a fact." *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 477 (4th Cir. 2011).

### B. Plaintiffs Fail to State a Claim Under the Securities Act.

Plaintiffs fallback claims under § 11 and § 12(a)(2) of the Securities Act also fail.  As the Underwriter Defendants explain, the Offering Documents sufficiently warned investors of all materials risks, and Horizon had no duty to disclose the allegedly improper practices or to characterize its pharmacy relationships using the pejorative terms Plaintiffs prefer.  Additionally, because the Complaint fails to clearly allege that a named plaintiff directly purchased securities in the public offering, they lack standing to assert a claim under § 12(a)(2).  *See, e.g.*, *New Jersey Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, 2010 WL 1473288, at *4 (S.D.N.Y. Mar. 29, 2010) (allegation that plaintiff purchased "pursuant and traceable to" offering documents was insufficient to assert standing).

### III. CONCLUSION

For the foregoing reasons, and the reasons set forth in the Horizon Defendants' Motion to Dismiss as well as the Underwriter Defendants' briefs, this Court should dismiss this action with prejudice.

11.

| | |
|---|---|
| DATED:  January 27, 2017 | COOLEY LLP |
| | |
| | /s/ *Koji F. Fukumura* |
| | 4401 Eastgate Mall |
| | San Diego, CA  92121 |
| | Telephone: (858) 550-6000 |
| | Fax: (858) 550-6420 |
| | Email: kfukumura@cooley.com |
| | |
| | *Attorneys for the Horizon Defendants* |